UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE HULTS,                                    Case No. 1:15-cv-37

     Plaintiff,                                               Barrett, J.
                                                               Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Michelle Hults filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of April 7, 2009 due to problems with her legs, back and shoulder. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On February 6, 2013, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 29-63). At the hearing, the ALJ heard testimony from Plaintiff and

William Cody, an impartial vocational expert. On August 5, 2013, ALJ Dwight Wilkerson denied Plaintiff's application in a written decision. (Tr. 14-23).

The claimant was born on August 9, 1967 and was 44 years old on the date last insured, December 31, 2011. (Tr. 22). She has past relevant work as a retail clerk and a cashier. (Tr. 21). The claimant testified that she believes that major impediments that prevent her working are the problems she has with her legs, back, and shoulder. (Tr. 40). She also suffers with depression which she alleges significantly interferes with her ability to maintain employment. However, she contends that she cannot afford to obtain treatment for her mental illness.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "hypertension, type II diabetes, diabetic neuropathy, gastroesophageal reflux disease, asthma, obesity, mild AC joint degenerative arthropathy of the right shoulder with superimposed tendinitis, and a cervical strain with superimposed mild degenerative disc disease status-post a motor vehicle accident in June 2011." (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work, with the following restrictions:

> She can never climb ladders/ropes/scaffolds; she can occasionally climb ramps/stairs, stoop, kneel, crouch and crawl; she can frequently balance; she is limited to occasional use of foot controls; and she must avoid concentrated exposure to extreme cold and all exposure to hazards; she can lift, push and pull 15 pounds occasionally and 10 pounds frequently; and she requires a sit/stand option permitting her to change positions every 30 minutes.

(Tr. 19). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a retail clerk and cashier. (Tr. 21). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 21-22).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) improperly weighing the opinion evidence;[1] 2) failing to properly evaluate Plaintiff's credibility; 3) failing to find that Plaintiff's mental impairments were "severe" and 4) formulating an RFC that is contrary to the evidence of record. Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's evaluation of Plaintiff's mental impairments is not supported by substantial evidence.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is

---

[1] Plaintiff asserts two errors under this category that will be considered together.

3

available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. ... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

4

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. The ALJ's Decision is not Substantially Supported

As noted above, Plaintiff argues that the ALJ erred in failing to find that her anxiety or depression were "severe" impairments at step-two of the sequential evaluation. Plaintiff further asserts that the ALJ improperly evaluated the findings of consultative examiner Jessica Twehues, Psy.D. For the reasons outlined below, the undersigned finds these contentions to be well-taken.

1. *Step-two Evaluation*

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to

establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). *See also Rogers v. Commissioner,* 486 F.3d 234, 243 n. 2 (6th Cir.2007).The regulations define a severe impairment or combination of impairments as one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). In the physical context, this means a significant limitation on a claimant's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. § 416.921(b)(1).

An ALJ's failure to find an impairment to be severe does not constitute reversible error where the ALJ determined that a claimant has at least one other severe impairment and properly considered all of the claimant's impairments, both severe and non-severe, in determining whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

2. *ALJ's Decision*

Here, at step-two of the sequential evaluation, the ALJ found Plaintiff's hypertension, type II diabetes, diabetic neuropathy, gastro-esophageal reflux disease,

6

asthma, obesity, mild AC joint degenerative arthropathy of the right shoulder with superimposed tendinitis, and a cervical strain with superimposed mild degenerative disc disease status-post a motor vehicle accident in June 2011 to be severe impairments. (Tr. 16). The ALJ, however, determined that Plaintiff did not have any severe psychological impairment. In so concluding, the ALJ noted the findings of Dr. Twehues, who performed a psychological evaluation of Plaintiff in August 2011 and diagnosed Plaintiff with "severe recurrent major depressive disorder with psychotic features and posttraumatic stress disorder." (Tr. 351). Dr. Twehues also noted that the claimant's intellectual abilities appeared to fall in the extremely low to borderline range. Plaintiff reported that she graduated from high school while participating in special education classes. Plaintiff also reported being raped by her cousin at the age of 12. Dr. Twehues assigned Plaintiff a Global Assessment of Functioning (GAF) score of 45.[2] A GAF score of 45 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). Dr. Twehues opined that the claimant would have some work related limitations stemming from these mental impairments. (Tr. 351-52).

Dr. Twehues specifically found that the claimant "is likely to have difficulty understanding and retaining instructions for multi-step complex tasks due to what appears to be limited intellectual abilities." (Tr. 347-352). Dr. Twehues further opined

---

[2] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living.

that due to severe depression and psychotic symptoms, as well as anxiety, Plaintiff is likely to have difficulty sustaining focus for even brief periods of time in a workplace setting. Her work pace is likely to be significantly slowed by depression, including limited energy, and being easily fatigued. On tasks requiring rapid, timed performance, she may show work pace significantly slower than many work peers. Dr. Twehues continued that the claimant appears to have a low frustration tolerance and presented as aggravated during the interview. She is likely to have difficulty coping with even minor workplace pressures. (Tr. 347-352).

The ALJ, however, noted that Plaintiff had not sought any mental health treatment for depression or anxiety from her alleged onset date of disability through the date of the ALJ's decision.  He further noted that Plaintiff gave no substantive reason for the lack of treatment other than she was unable to afford such care. The ALJ found this explanation to be inadequate, because Plaintiff was able to afford treatment for her other conditions.   The ALJ further stated:

> The claimant's lack of treatment for any mental impairment during the relevant time period at issue strongly suggests that, despite the snapshot GAF score of 45 provided by Dr. Twehues on one particular date, any mental impairment that the claimant had was no more than mild in severity and mild in its effect on her daily activities, social functioning, and ability to maintain concentration, persistence or pace.  In view of these considerations, the claimant is not found to have had a severe mental impairment from April 7, 2009 through the date last insured.  Consistent with this assessment, a reviewing psychologist for the State agency, Dr. Waddell, determined on November 3, 2011 that the claimant did not have a severe mental impairment.  Prior thereto, a reviewing physician for the state agency, Dr. Gambill, similarly determined on October 19, 2011 that claimant did not have a severe mental impairment.  Moreover, a review of claimant's systems following her motor vehicle accident in May 2011 was negative for psychological problems such as depression or anxiety.

(Tr. 18).

The ALJ's decision in this regard fails to comply with Agency regulations and controlling law. In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight afforded to medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.,* No. 1:07cv331, 2009 WL 648597, *13 (S.D.Ohio Mar.11, 2009).

Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue,* No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

Furthermore, as a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security,* 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services,* 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Here, it appears that the ALJ rejected Dr. Twehues assessment and accepted the findings of Dr. Waddell and Dr. Gambill in determining that Plaintiff's mental impairments were not severe. However, such an explicit finding is never made by the ALJ and so the Court can only speculate the weight assigned to each. As detailed above, the ALJ simply states that Dr. Waddell and Dr. Gambills findings are consistent with his determination that Plaintiff does not have a severe mental impairment. However, as noted above, Dr. Tweheus was the only mental health professional that performed a psychological evaluation of Plaintiff, and as such should have been afforded more weight than the non-examining reviewing physicians. *See* 20 C.F.R. § 404.1527(d)(1) (More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant).[3] The undersigned recognizes that it is the duty of the ALJ, and not the Court, to weigh the medical evidence. However, the ALJ's failure to fully and clearly articulate his rationale for the weight given to the opinion evidence prevents this Court from engaging in meaningful review of the ALJ's decision in this regard. *See Hurst,* 753 F.2d at 517; Social Security Ruling (SSR) 82–62.

Furthermore, the ALJ purportedly rejected Dr. Tweheus findings based largely upon her lack of mental health treatment. However, the Sixth Circuit has questioned this rationale. *See Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989) ("Appellant may have failed to seek psychiatric treatment for his ... condition, but it is

---

[3] See also *Blankenship*, 874 F.2d at 1121( no cause existed to question the diagnosis of a psychiatrist made after only **one interview** and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history). (emphasis added).

11

questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") Moreover, "ALJ's must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Commissioner of Social Sec.,* 572 F.3d 272, 283 (6th Cir.2009).

Additionally, while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. *Mason v. Comm' r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963). Here, the ALJ's step-two finding also relied on the fact that Plaintiff did not report any psychological symptoms in the emergency room following an auto accident. As noted by the Plaintiff, she was being treated for physical injuries received in an auto accident and no psychological evaluation performed. Thus, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975).

Given that the ALJ improperly rejected Dr. Twehues opinion, this case should be remanded for further review of the evidence. Further, under this Circuit's prevailing *de minimus* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and

12

experience." *Higgs*, 880 F.3d at 862. Here, Dr. Tweheus' assessment demonstrates that Plaitniff's mental impairments have more than a minimal effect on her work ability.

Moreover, this error is not harmless. Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 Fed.Appx. at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). Here, the ALJ did not consider Plaintiff's mental limitations (even if non-severe) after step two or account for any mental limitations in Plaintiff's RFC. Accordingly, the ALJ's errors at step two are not harmless.

Accordingly, this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four

13

remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs*., 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation;

2. As no further matters remain pending for the Court's review, this case be **CLOSED**.

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHELLE HULTS,　　　　　　　　　　　　　　Case No. 1:15-cv-37

　　　　Plaintiff,　　　　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law

15

in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).